at all. At this time, would counsel for the appellant introduce himself on the record to begin? May it please the Court, Yakov Roth for a point of appellant, Medtronic. If I could reserve two minutes for rebuttal, please. Two minutes, did you say? Yes. Yes, you may. Thank you, Your Honor. Your Honor, the form that I'm about to present,  the forum non-convenience legal framework is well-established by this Court's precedence. First, the defendants have to identify an alternative forum where the claims could be brought. And second, if there is such a forum, the defendants have to prove that the private and public interest factors strongly favor proceeding in that alternative forum. In this case, respectfully, the District Court erred at both stages of the analysis, and each error requires reversal of the dismissal. And I'd like to start, if I could, with the first threshold issue, which is, is there an adequate alternative forum for these claims? As the Court has made clear, there's only an alternative available forum if that alternative forum would have jurisdiction over the case and the parties, which means the defendants have to be subject to service process and personal jurisdiction in that court. As I understand it, there's no, you're not saying the Court has no jurisdiction over the case in Costa Rica, you're saying no jurisdiction over one of the parties because that party has not said that it would accept service process. Right. So one of the... That argument, I could not find that argument having been made below at all. Yeah, so I think the argument was actually made, Your Honor, it was made in terms of competence, which I think is the sort of equivalent concept. Well, did someone ever say to the judge, is it innovative, is that the name of it? Santana and Innovative. Did anyone ever say to the judge, Santana Innovative isn't conceding that it could be reached by service of process, so we win? So what we did was, in our opposition to the forum non-convenience motion, we attached an expert report, this is page 114 of the appendix, that said because these defendants are not domiciled in Costa Rica, the Court in Costa Rica does not have competence over the case, and we then flagged that in the brief, it's at page 11. But that's a whole different point, that saying they're not domiciled there, and therefore the Court doesn't have jurisdiction. Right, and the way they could solve that problem is by consenting, right? So the consent is the way that a defendant would prove, well, there may be a dispute, but I'm willing to submit to the jurisdiction of the foreign court, so that sort of solves the problem. That's typically how it's done, but that only comes up if... You're saying that when you use the word competence, that's sort of your code word for suggesting that there was no jurisdiction? I think that's the Costa Rican legal way of conceptualizing it. Yes, Your Honor. The expert report said, look, they're not here, they're not in Costa Rica, they're not domiciled here, the Court in Costa Rica can't reach them. One of the defendants then said, well, I'm willing to go along with it, I submit. That solves the problem for him. The problem is there are three other defendants who never said that. And the district court, in analyzing this, I mean, the district judge recognized this and said, you know, one of them has agreed, the other three haven't. The Court said, well, that weighs only slightly in favor of dismissal. Let me put it this way. I think your argument, with some support in the law, is that the inability to serve innovative and get them into court in Costa Rica is a lock-hand winner. Correct. Certainly there's no suggestion anybody tugged the sleeves of the trial court judge and said, you know, we win for this reason, end of case. Well, look, Your Honor, it certainly was not the focus of the briefing. The focus of the briefing was the interest balancing. I think the reason for that is typically when a judge does enter an order of dismissal for form nonconvenience, it's conditional. So the typical practice is to say, well, yes, I think the factors favor dismissal. I'm going to make that conditional on submission to jurisdiction. Let me ask you, what if the judge had said this was conditional upon, you know, making all your other arguments at this time, that form nonconvenience is not appropriate? Yeah. We would then move to the second problem. I mean, that would solve the first problem. That would at least establish that we can proceed against them somewhere. At this point, if the Court affirms, we have no right to proceed against those three defendants anywhere, which is really not the way form nonconvenience is supposed to work. If I'm reading the record correctly, the judge certainly didn't pick up that you were making such an argument, and no one went back to him and said, got a motion to reconsider or something like that. Timeout, Judge, we could have been clearer about it, but this is a big point. Your Honor, there was no motion for reconsideration. I don't think that affects a waiver. I don't know of a case out of that effect. It was flagged in the briefs below. It was their burden to establish it. There is a legal error. The Court reached the issue, didn't say it was forfeited, addressed it on the merits. I suggest counsel below wasn't even thinking of the argument, much less communicating it. Otherwise, you would have heard some squealing. I mean, you know, there was no hearing on the motion. It was done all on the papers. But does that, what we're talking about, go to your other point, that it was the movement who had the burden of showing an alternative forum, and that it was up to them to affirmatively establish that Costa Rica had jurisdiction over all the parties? I think you're saying thus, because they had the burden, you were not as robust, shall we say, below, because you assumed that the Court would hold them to their burden. Yeah, or make it conditional, Your Honor, which is a typical practice. And it didn't happen. There was, I think, a misunderstanding of the law in the Court's order, ultimately, in saying that this was just part of the balance. The law is clear. It's not part of the balance. And yes, I wish that had been clearer below, but I don't think it was waived or forfeited. And I do think the severe consequences of the error weren't reversal. Can you flesh out what you mean by the Court making it conditional? Is the usual process that the Court will issue some kind of interim order saying, conditionally, this X, Y, and Z, because there's an alternative, convenient forum? Yeah, if there's any dispute. And procedurally, then you come back. Is it a two-step process? Your Honor, what I've seen in many cases is the order will say, if there's a dispute over, if there's any kind of dispute over amenability to service in the foreign court, the court will say, look, assume if they will, this is conditional dismissal upon their agreement or submission to accept service abroad and not raise personal jurisdiction or venue or other similar objections to the foreign court's power. I'm not sure if at that point they say, you know, they file something and say yes, or it just sort of proceeds. I can't really answer that. But I have seen it in the case law that it's a frequently done that the Court makes it conditional on that. And that solves the first problem. That takes us to the second problem. And I would like, if I could, to move to the second problem, which is the interest balancing. And on that front, what I would say is I think the District Court either applied the wrong standard or unreasonably applied the right standard because the outcome that the Court reached really cannot be reconciled with the standard or with this Court's precedence. And most particularly, I would just point to the two decisions from this Court last year that reversed foreign nonconvenience dismissals where I think the grounds were considerably stronger for dismissal than in this case. That's Nanju and Curtis cases. Curtis came after the District Court's opinion here. So to be fair, he didn't have the benefit of that decision. But I don't think the outcome here can be squared with those decisions. And, you know, just to step back, Nanju and Curtis were personal injury cases where all of the allegedly tortuous conduct occurred abroad. In one case, it was a drowning at a pool in Canada. In the other, it was a boat accident in Greece. Cases were filed here because, in one case, the plaintiff lived here. In the other, the defendant lived here or in the forum. But all the conduct was abroad. It was in Costa Rica. But the plan was developed in Puerto Rico. The plan was executed in part from Puerto Rico where the defendants created the false purchase orders and invoices and sent them for processing. Medtronic then processed those invoices in Puerto Rico at its sister company. Defendants knew they would do that because defendants had worked for Medtronic Puerto Rico. Alice, can you address their argument that because of the nature of the alleged scheme, they couldn't present a viable defense in Puerto Rico because of the availability of witnesses? Yeah. Sure, Your Honor. I would say a couple things. One, I don't think they've substantiated that. I don't really understand exactly what the argument is. I mean, they say there were other wrongdoers in Costa Rica, which is true. I mean, that's in the complaint. But they never really explained what is the relevance of these individuals? What are they going to say? Why are they not available here? Why would a video deposition that they concede they can take in Costa Rica not be sufficient for these purposes? And then you have to balance that, of course, against the evidence that's in Puerto Rico. It's not just I can point to something there, I win. This court has said it's got to be so disproportionate that it's really oppressive to require the defendants to proceed in Puerto Rico. I think that's very hard for them to do when they are here, when there is considerable evidence of the fraud that is here, including not only them and their communications, but the Medtronic Puerto Rico evidence. All of the laundering activity, which is another set of RICO predicate acts, took place in Puerto Rico. And then, you know, I would just add on top of that, there's been a pretty significant factual development since the order below, which is the criminal indictment. So at this point, defendants really have no choice but to defend the conduct here, right? It may be in the criminal action first, but they've got to defend the case in this forum, and it's just very puzzling to think that we could require them to, you know, they're going to have to defend the criminal case, but it would be so oppressive to defend the parallel civil action in the same forum, right? There's something that just doesn't sit right about that. The criminal case, it was indicted in this district, correct? That's correct, Your Honor. And who are the defendants are indicted in the criminal case? The two individual defendants. And let me say something from a practical perspective. Obviously, if there's going to be depositions in this case, wherever, as to these persons, this is going to be stayed for quite a while, because obviously they have a Fifth Amendment, anything they say that could affect them. So you're either waiting, your client's waiting, they go to trial or plead guilty, and I'm sure whatever comes out of that, their admissions or whatever, it's going to be used in this case as well. And I believe we can probably take judicial notice of the indictment at this time. But would that be a factor that favors that this case be, you know, I know it wasn't discussed, but it's something that wouldn't, that's evidence that's going to come out from this district. Yeah, I think Your Honor is quite correct. If they do plead guilty or are found guilty in the criminal case, that, of course, will be preclusive in the civil case. So that whole piece of the case goes out. On the other hand, if they are successful in defending the criminal charges, then I think it's hard for them to say they, you know, it would be so unfair to defend the civil charges in the same district. It just doesn't really make sense. The other point I would make about the indictment is, you know, obviously the defendants themselves are perhaps, you know, they really are the most important witnesses. Not only are they located here, they can't leave. So because of the conditions of, you know, typical conditions of release, and the court can look at the docket in the criminal case to see this, they're not allowed to leave the country. They can't go to Costa Rica. So that sort of further underscores that this order really can't. Well, to go to Costa Rica, the district judge would have to allow. Right. There would have to be some sort of additional hurdles to jump through to make it happen. So I think that really just further underscores that this outcome can't be reconciled with the high standards. From a practical perspective, if there is a jury trial, a criminal jury trial, most of the witnesses that you would use for the civil trial will probably be testifying for the United States of America as well, correct? I would agree with that, Your Honor. Could you briefly, there's a construction project here, and as I understand it, the claim is they falsified purchase orders saying they were supplying stuff to the construction project but didn't do it. Correct. Does that, normally I would think the way you would do it is here's the purchase order, then you look at the construction project and it's not there. What role is that second step going to play here? Right. So there is some discussion of, you know, the view, viewing the process. The problem is the project has been completed for years. So it's not like the project never got done. It got done. In the course of it, there was a lot of fraud. But at this point, there's nothing to view other than a finished facility in Costa Rica. Is there anything that's going to prevent, and I guess this would be true in the criminal case too, but is there anything that's going to prevent evidence of the actual money transfers being presented as evidence? I don't think so, Your Honor. I'm still thinking about why they don't have a viable defense here. Yeah, I mean, it's really a paper case in some ways. I mean, we didn't show the invoices, the money transfers, the emails where they say, you know. But the paper's available here in Costa Rica. Yeah, of course. And Medtronic said anything that is in its possession in Costa Rica would bring and make available to plaintiffs, to defendants here as well. Thank you. Thank you, counsel. At this time, counsel for Feliciano Soto can introduce himself on the record to begin. Attorney Raul Mariani Franco on behalf of Mr. Feliciano. Good morning. May it please the Court. I'm sorry. Bringing the criminal case to this record today, it's like a continuation of the unfairness that Medtronic pretends to impose on the defendants in this civil case. Now, why? The criminal case is at a very early stage, and the Court is unaware, and I don't think it would be proper to provide the Court, for example, what's the procedural status of that case, what's the discovery evidence that was provided in the criminal case, which has been provided. And that goes further to what are the allegations in this case. If all of the defendants have not submitted to this jurisdiction of the Costa Rica Court, how can that be found to be a convenient forum? I think the argument that Mr. Feliciano clearly submitted, there's no question as to that. So maybe one out of four. Yeah, but Mr. Santana's attorney, I mean, he's here and can further explain. But in my view, the matter was clearly attended to below at the district court, and it's perplexing why Medtronic didn't raise any argument as to that. You have the burden of showing that there is an alternative convenient forum. And so your burden is to demonstrate that Costa Rica is available. It's not their burden to demonstrate that Costa Rica is not available. And I would say how we did that. How did you do that? Yeah, how Feliciano did that was filing a motion submitting and submitting an affidavit from a Costa Rican law expert. What about the other defendants? They joined our motion, Judge Thompson. They joined without any reservation. So I understand. Again, their attorney is here and can further explain their position. But from the record, from the plain review of the record, it will assume that if you join a motion. So you're saying that by joining even without submitting separate affidavits that we are to presume that they are submitting to the jurisdiction of Costa Rica? Well, that's what I proposed in my client's brief as an alternative. They have never rejected. They have never stated on the record we are declining to submit. So the question. But they haven't affirmatively said, yes, we're going to submit. Yeah, but I will submit, Your Honor, that once you join a motion without any reservation, they're adopting all of the arguments of Mr. Feliciano and all of the submissions of Mr. Feliciano. But the motion is for a form of non-convenience. Yeah, the motion is explaining to the court why Costa Rica is a proper forum, both as to the legal matter, jurisdictional competency, and also as to the submission of the parties. I think this is much adieu as to something that may be clarified today. They're agreeing that it's convenient for your client. That doesn't mean that they're also adopting that they are submitting to the jurisdiction of Costa Rica, unless you want us to read it the other way. No, Your Honor. What I'm saying is they joined. Mr. Feliciano, I think there's no issue that he is clear on the record. Maybe Mr. Trujan's clients who's here, their record isn't clear. That's even what's stated by the plaintiff because they never objected because their record didn't become clear that wasn't adhering. So that's a matter that may be clarified today and that may be part of any order. So I think that's much ado about nothing. So are you saying that counsel sitting at the table with you is about to get up in a few minutes and say that he concedes on behalf of all the other defendants that exceed to jurisdiction in Costa Rica? I think I shouldn't speak for him. I would allow him to express to the court, open the questions that you may have. What I'm saying is. Well, then, right now, as we're sitting here, how can we possibly say that? Put aside whether counsel has waived something or made a mistake. Just look at the merits. How can we possibly say Costa Rica is a favorable forum when it's not even available to sue some of the defendants when you have it established that it is available? I would say that's incorrect as a matter of fact and as a matter of law. Your Honor, with all due respect. Three of the defendants are kind of playing cat and mouse here. They're saying this should be brought in Costa Rica, but they're not unconditionally saying and we can be hailed into court in Costa Rica. I'm saying that the record doesn't reflect that, Judge Gallata. What the record reflects is silence on some parts from the side of the mediator and on the defendant's side, Mr. Feliciano is the one who retains the Costa Rican expert. So he presents the expert. He presents the reason why Costa Rican courts are available and the other party joins. But the expert doesn't waive any jurisdictional, you know, submitting to the jurisdiction. No, I agree. But the expert, as Inmediata recognizes, clearly states that there has to be a submission. That's one of the contents of his affidavit. As we sit here right now, have all the defendants irrevocably waived all jurisdictional defenses to being hailed into a Costa Rican court, yes or no? From my client's position, the answer is yes. For all the defendants? I would say yes, yes. So all the defendants have irrevocably waived jurisdictional defenses? From what I represent, one client. But from my understanding, the answer is yes. I'm not asking about your client. You're asking that the whole lawsuit be moved. You have a burden of showing that there's an available forum. If they can't be hauled into court there, it's hard to see how it would be available. So if we're asking you, does the record now show that all of the defendants irrevocably conceded to jurisdiction? I understand that the answer is yes. Okay. So now moving on, then we go to the second step, if the court allows me. And there are three. Judge Stonestone, I'm sorry. How is it that you are crippled in presenting a viable defense by having to defend in Puerto Rico? Sure. This case, it's more about a dispute about whether it's not only about whether jobs that were not performed. The complaint clearly states that some jobs were performed, and they provide a long explanation as to that they were overbilled or increased costs or reasonable costs. All of those are in the documents. But the services, all of the services were provided were done in Costa Rica by mostly Costa Rican nationals who are the witnesses as to whether something was done or not. The best witness or the direct evidence is in Costa Rica. Those witnesses, we're talking about dozens of persons, many engineers, in fact, because this was a complex pharmaceutical operation that required many engineers, Costa Rican engineers. And those were retained. Our client defense is that the cost is very reasonable. Counsel, we specifically said in Curtis that part of the burden of the movement is to demonstrate that those witnesses aren't available to attend the forum of plaintiff's choice. And those people declined? I think Inmediata admits to that in their motions below and in their briefs when they ask the court to consider that defendants are going to have to use video depositions and video testimonies. Their statements as to that is a confirmation that they know that many, if not all, of the witnesses that defendant's interest be presented won't be available instead unless it's through video deposition or video testimony. And this court and other courts have ruled that that's pretty unfair when Inmediata will have all their witnesses present and defendants will have to rely to prove that their job was done on video testimony from Costa Rica, assuming that's available. Any more? If there's any other questions. Thank you. Thank you. Thank you. At this time, if counsel for Innovative Engineering, Corp, and all would introduce themselves on the record to begin. Good morning and may it please the court. I'm attorney for John Marin for the defendants at Police Innovative and Santana T.O. Counsel, I think you know the question. Yes. I think I can speak to the three of us. We want to hear the answer to it. Yes, Your Honor. We have made two arguments. One is that the law does not require submission. All that requires is amenability service. And then there's a federal rules here for and the Hague Convention. Medtronic's in a reply brief at page six admitted that amenability does not mean submission, just that it would make it easier for Medtronic and it would be cleaner. But you cannot fault the district court for not providing that request when it was never posed pre or post judgment. It's your burden. It's your burden. The burden is on the movement. To prove amenability. Well, to prove that it's an available forum and it's an adequate forum. Before this court, there's no... But then it becomes a matter of how you do that. Yes. And one very persuasive manner, at least as to the first point, is to concede jurisdiction in the other forum, even if it's not required. It's a step that goes towards you satisfying what we've described as the heavy burden, since the presumption is that the person filing is entitled to the form of their choice. Okay, Your Honor. Your Honor, I would take exception and we can discuss it later about the heavy burden, because this is a foreign plaintiff. But all we had to prove was that it was an available forum. And we did that. And the court found that we did that. We cited a number of cases saying that it was available. Judge Helpe, you may have over-anticipated your ability to anticipate what the question was. The question was... Submission. Yes. Okay, Your Honor. Like Feliciano Soto, he submitted to the jurisdiction. Do your clients likewise do the same as he infers, or they hold a different position? That's what I think. If the court does not deem the argument waived, that it feels that it's a requirement, yes, I think that when Feliciano made that submission at DACA 2027, we joined without reservation. And that motion for joiner was granted. The issue was never raised again. They could have said, no, no, no, we want an explicit submission. Right. And they never did that. So we now have from you an explicit submission. Is that correct? Yes. Thank you. If that's required, yes. Okay. That is one of the points. The other, Your Honor, is what Judge Thompson just mentioned, the standard. We feel that Medtronic is wrong in arguing that it's a heavy burden that we have to comply with. That's a standard when a U.S. plaintiff files in U.S. courts. When it's a foreign plaintiff, there's two issues. One, it's entitled to less deference, and Medtronic admitted to that before the district court. Well, it's a two-way street because we've got the odd, usually in these cases, the parties each want their home court. And you're pointing out that the plaintiff here is not asking for his home court. He's asking for Puerto Rico rather than Costa Rica. But on the flip side, the defendant is not asking, the defendants are not asking for their home court. So that factor would seem to neutralize each other. We're back to the status quo is where the plaintiff files the complaint, and particularly when it's in the jurisdiction where the plaintiff files the complaint, particularly when it's in the jurisdiction where the defendants reside. Why shouldn't that be seen as heavily weighting towards staying in that jurisdiction? Your Honor, because if you read the verified complaint and the opinion and order, both the complaint and the court recognize that the center of gravity of this case is in Costa Rica. Almost everything happened there. The fraud has to be proved it occurred there. Well, but the planning of the fraud, the sending of communications, I thought some of the planning was done here and some of the origination of the fraudulent communique. No, I would disagree, Your Honor. That evidence hasn't been presented. But is it in the complaint? It's in the complaint. Okay, so that at least is an actual allegation that we have to accept for the time being as being true. Yes, Your Honor, but there's also allegations that there's 16 other culpable actors that the services were provided in Costa Rica by Costa Rican employees using Costa Rican services and goods. The work was performed there. The contract was – well, there is no contract, but the work orders were signed there. Let me ask you, are any of those other purported defendants indispensable parties to this case? Because if you're a plaintiff, you can sue against X, Y, and Z. You don't have to bring everybody else. Yes, Your Honor, but what happens is that they're affecting our defense in the sense that we can't implead those potential defendants, and we can't force them to come to Puerto Rico. And the district court recognized that. It doesn't have the power to do that. So we would be hampered. And the district court expressly stated that Medtronic's convenience would hamper Innovative's defense of this case. How about the change here represented by the indictment? It seems to me a major task for all involved will be coordinating in some manner or another the contemporaneous civil and criminal proceedings. Isn't a district court in Puerto Rico going to be in a much better position to see that two proceedings don't run afoul of one another or cause untoward problems than would be a court in Costa Rica? I'm not a criminal defense attorney, and I don't claim to know how that would work. But I think Judge LP touched on some very critical issues, which is the Fifth Amendment, and that I assume that counsel that's defending Santana will ask for a stay. So as to the fact as to whether my client can travel to Costa Rica, that's up to the district court to allow my client to travel there for trial. Let me ask you also, with the indictment now at issue in this junction, again, if there's a presumption of innocence, we don't know what's going to happen. But let's, and again, this is just theoretical. If your client and any other defendants were to be convicted either by plea or after a jury trial, what would be then the need for the civil case to be tried in Costa Rica? Because there's going to be plenty of evidence either through collateral estoppel or admissions to prove the case here. Or should it be a question that waits another day? It's definitely something that occurred that Judge Dominguez did not have before him when this occurred. Had he had that before, he might have said, well, let me stay the whole case at this time, and then I'll figure out what to do after. Again, in this district of Puerto Rico, there's been multiple civil cases where there's indictments, and the civil case has to get delayed for a while. Your Honor, I think that if the trial were held in Puerto Rico, the evidence would still be in Costa Rica. The witnesses would still have to come from Costa Rica. But it would be a burden that the United States seemingly is willing to undertake. Well, if they are willing to undertake that, and that happens, and my client has an opportunity to fully defend himself, then I don't know what the impact of that would be in the civil case. What I'm saying is isn't it perhaps now with the indictment premature to consider transferring the case or dismissing on forum, I mean, not transferring, dismissing on forum nonconvenience when there are a lot of factors that could point to eventually keeping the civil case after the criminal case in the district. Put differently, is it worthwhile for us to consider a remand to the district court for reconsideration of the motion in light of the indictment? I would disagree, Your Honor. I think that what this court has before it is whether the district court abuses discretion in dismissing the case, and that is a separate issue. But is there anything that would cause us to believe that the district court, in light of what is subsequently transpired, would reach a different conclusion? I couldn't answer that question, Your Honor. I couldn't speak for the judge. Or at least the district judge could say, well, I'm going to stay the case, and I'll revisit the issue once we know more from the criminal proceeding. That could be an answer. I don't know. I don't know what the district court would do in that case, but I believe that's not required. I think the issue is whether the district court abuses discretion. That's it. At the time it made the decision. At the time it made the decision, and probably today. What impact is that going to have down the road in the case in Costa Rica? That's a matter for another day. I can't. But should we be at all concerned about judicial efficiency given the criminal cases? There are two different matters I would submit to the court, two separate matters. If your client is found guilty, even in the context of the criminal case, there's going to be all kinds of possible restitution orders flowing from that that might impact what's going on in this case. Yes, either way. Either affirming or remanding the case, that would be the case. Let me add, if your client or the other defendants are convicted, the natural persons who are defendants, they could end up serving prison sentences. And if they're serving prison sentences at some point, they can't go to Costa Rica. So those are issues that, from a practical perspective, are now present in this case. And they're very far down the road, I would submit. Well, it's clear now that there's been an indictment. Yes. And I assume, have they been arraigned? I believe so, Your Honor. Again, I'm not handling that case. Are there travel restrictions now? Because the usual travel restrictions is you can't leave the jurisdiction. He's not in Puerto Rico currently. So he can travel within the states. And I assume that the court can allow him to travel to Costa Rica. This is a June 2022 indictment, so they must have had the initial appearance and appeared before the magistrate. Yes, I would assume. I'm not the counsel for that case. And the other thing that I would like to mention, Your Honor, has to do with the amended pleadings. The case was filed before defendants filed their motions to dismiss. We asked the district court to order compliance with the standing case order to submit a Rico case statement. When plaintiffs did, they altered their pleadings. They included new defendants. They included new causes of action, new predicate acts, new evidence. We objected to that. And when the district court dismissed the case, the docket text at entry 79 explicitly says that the motion, the informative motion submitting the amended pleadings was denied as moot. And that issue, that denial is not before this court. So I think that argument was waived. But I would counsel the court to be very careful because Medtronic's briefs are based on the amended pleadings, the amended pleadings that include Medtronic Puerto Rico as the supposed center of this controversy. And I would counsel the court to be very careful about that because even the district court recognized that those amended pleadings were meant to supply the domestic injury requirement from RJR Nabisco. So that's something that I would like to bring up. Let me ask this since you mentioned the Medtronic domestic Puerto Rico entity. In theory, that entity could file the same complaint going by Medtronic and it's a separate case. I guess it could. I don't think it would survive. But I think they could. Yeah, but the thing is, Your Honor, I would also like to mention that the evidence that Medtronic is referring to might be pertinent to the predicate acts. But before you get to the predicate acts, you have to establish a fraud. And the fraud allegedly happened in Costa Rica. The verified complaint says that some services were provided as contracted. Some were provided at an excessive price and some were not provided at all. It doesn't explain how many were valid, how many were overpriced, or how many were not provided at all. Okay, so that's a problem that has to be decided first. And for that, I would submit you have to go to Costa Rica. You have to talk to the witnesses. You have to hear their testimony, like the district court said, live testimony in a fraud case. You have to visit the site. You have to, for the ones that are allegedly overpriced, you would have to establish overpriced by how much. What's the cost of labor in Costa Rica? What's the cost of materials there? I think your time is running out here. Yes, Your Honor, I'm sorry. I'm sorry. Thank you. Thank you for your time, Your Honor. At this time, if Counsel for Medtronic would please reintroduce himself on the record to begin. He has a two-minute rebuttal. Thank you. Yaakov Roth for Appellant Medtronic. I'm going to try to make four quick points if I can. First, on the first requirement of alternative forum, it sounded like there was at this point an agreement to submit. I think at minimum, even looking just at that element, that would require a vacature for the court to enter an order that is conditional so that we have something on the record because given how long it's taken and the opportunity that was not taken to make that proffer below and in the brief on appeal, I'm a little bit skeptical and nervous about relying on a statement of counsel at oral argument. But if that were made, that would address the first point. On the interest balancing, just on the legal standard, Judge Kayada asked about how that plays out given that the plaintiff is foreign but sued in the defendant's home. This court in Mercier 2 said that the presumption is actually enhanced when the plaintiff sues in a location where the defendant has a substantial presence. So maybe there's some reduction because the plaintiff is foreign but then there's an increase because the defendants are located here. I think ultimately it's sort of a wash and defendants do bear the burden of showing that the factors strongly favor dismissal. In terms of the convenience, what I heard opposing counsel point to was the Costa Rican engineers who did or didn't do the work. Those are their former employees, their contractors, and yet we don't have anything in the record about who they are, whether they're willing to come here. I would think given that those are not bystanders, those are the people they supposedly hired, that ought to be something they could have provided and substantiated and they did not. And then finally, although we think that there was an abuse of discretion and unreasonable balancing even at the time, certainly I would agree that the criminal indictment has just fundamentally changed the landscape of how this case is likely to proceed here, and at minimum that would require a remand to the district court. Was there any consideration given to seeking an indicative Rule 60B ruling from the district court based on the indictment? There was not, Your Honor. I don't know that the – I'm not sure that the district court would have jurisdiction over that given that the entire case was dismissed. Usually I've seen an indicative ruling. It's where an interlocutory appeal of a particular issue. I think that's what we're on, an appeal right now. We're on appeal, but there's nothing pending. The jurisdiction of the case is in this court, but that's all right. You can answer my question. Yeah, the answer is no. There are no further questions. Thank you very much for your time. That concludes argument in this case. All rise.